UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BRANDON HEFFERAN, *et al.*, | : | Case No. 1:14-cv-911 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| ETHICON ENDO-SURGERY, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS BASED ON THE DOCTRINE OF *FORUM NON CONVENIENS* (Doc. 36)**

This civil action is before the Court on Defendants' renewed motion to dismiss based on the doctrine of *forum non conveniens* (Doc. 36) and the parties' responsive memoranda (Docs. 39, 41).[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Brandon and Sabine Hefferan bring claims against Defendants Ethicon Endo-Surgery, Inc. and Johnson & Johnson for negligence, violations of the Ohio Product Liability Act (Ohio Rev. Code § 2307.71 *et seq.*),[2] and loss of consortium.  (Doc. 35).  Plaintiffs allege that Brandon Hefferan was injured by an Ethicon surgical stapler

---

[1] Defendants seek oral argument on their motion.  (*See* Doc. 36 at 1).  S.D. Ohio Civ. R. 7.1(b)(2) provides for oral argument where it "is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented[.]"  Here, the Court finds that the factual and legal issues are clear on their face, so oral argument is not necessary.  *See Whitescarver v. Sabin Robbins Paper Co.,* Case No. C–1–03–911, 2006 WL 2128929, at *2 (S.D. Ohio July 27, 2006) (C.J. Dlott) ("Local Rule 7.1(b)(2) leaves the Court with discretion whether to grant a request for oral argument.").

[2] Claims brought pursuant to the Ohio Product Liability Act include claims for defective manufacturing or construction, defect in design or formulation, defect due to inadequate warnings or instructions, and defect due to nonconformance with representations.

used in a hemorrhoidectomy performed in July 2012 in Simmerath, Germany.  (*Id.* at ¶¶ 1, 2).  Plaintiffs seek compensatory damages, punitive damages, attorney's fees, costs and disbursements of this action, prejudgment and post-judgment interest, and any other relief the Court deems appropriate.   (*Id.* at ¶ 13).

Plaintiff Brandon Hefferan is a U.S. citizen domiciled in Michigan and residing in Germany.  (Doc. 35 at ¶ 5).  Plaintiff Sabine Hefferan, Brandon Hefferan's spouse, is a German citizen who resides in Germany.  (*Id.* at ¶¶ 6, 62).  Defendant Ethicon Endo-Surgery ("EES") is an Ohio corporation with its principal place of business in Blue Ash, Ohio.  (*Id.* at ¶ 6).  Defendant Johnson & Johnson ("J&J") is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.  (*Id.* at ¶ 8).

Defendant EES distributed the PPH 03 surgical stapler allegedly used in Plaintiff Brandon Hefferan's surgery.  (Doc. 36-7 at ¶ 3).  The overall direction of EES' business, and work relating to the design and marketing of the stapler and to regulatory compliance and quality control, took place principally at EES's facility in Blue Ash, Ohio.  (*Id.* at ¶ 4). The staplers are manufactured in Juarez, Mexico.  (*Id.* at ¶ 5).  J&J is the indirect corporate parent of EES, but had no role in the design, manufacture, or sale of the stapler at issue.  (*Id.* at ¶ 6).

Medical records show that all remedial treatment intended to address complications arising from Plaintiff Brandon Hefferan's original surgery occurred in Germany. (Doc. 36-3; Doc. 36-4).  Plaintiffs' initial disclosures identify thirteen witnesses with discoverable information, and all but one live in Germany.  (Doc. 36-4).  Plaintiffs also identified two categories of unnamed persons with discoverable information: doctors and

medical providers at two German hospitals.  (*Id.*)  Defendants identified two individuals with discoverable information, both in the Southern District of Ohio.  (Doc. 36-6).

Plaintiffs filed this civil action in New Jersey (Doc. 1), and Defendants filed a motion to dismiss based on the doctrine of *forum non conveniens* (Doc. 20).  The New Jersey District Court declined to decide whether this civil action should be dismissed, instead concluding that the action had no connection to that District and transferred the case to this District.  (*See* November 25, 2014 Minute Entry).  Following transfer to this Court, Plaintiffs filed an amended complaint (Doc. 35) and Defendants renewed their motion to dismiss based on the doctrine of *forum non conveniens* (Doc. 36).

## II.     STANDARD OF REVIEW

Under the doctrine of *forum non conveniens*, "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case."  *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 (1981) (quoting *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, (1947)).  Even if jurisdiction and venue are properly established, a court still has the discretion to dismiss an action on the grounds of *forum non conveniens*.  *Am. Dredging Co. v. Miller,* 510 U.S. 443, 448 (1994).

The Sixth Circuit has held that a "dismissal on *forum non conveniens* grounds is appropriate where the defendants established, first, that the claim can be heard in an available and adequate alternative forum and, second, that the balance of private and public factors . . . reveals that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Faurecia Exhaust Sys., Inc. v. Walker,* 464 F.Supp.2d 700, 709 (N.D. Ohio 2006) (citing *Duha v. Agrium, Inc.,* 448 F.3d 867 (6th Cir. 2006)). Ultimately, "'[t]he *forum non conveniens* determination is committed to the sound discretion of the trial court.[']" *Barak v. Zeff,* 289 F. App'x 907, 910 (6th Cir. 2008) (quoting *Piper,* 454 U.S. at 257). The doctrine of *forum non conveniens* "is a flexible one, requiring the court to weigh multiple factors relating to fairness and convenience based on the particular facts of the case." *Rustal Trading US, Inc. v. Makki,* 17 F. App'x 331, 335 (6th Cir. 2001). However, the ultimate inquiry in any *forum non conveniens* analysis is whether trial in a foreign forum "will best serve the convenience of the parties and the ends of justice." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947).

The Defendants "bea[r] the burden of proof on all elements of the *forum non conveniens* analysis." *Norcold, Inc. v. Greg Lund Products Ltd.*, 109 F. Supp. 2d 819, 828 (S.D. Ohio 2000).

### III.     ANALYSIS

#### A.     Adequate Alternative Forum

To dismiss a case for *forum non conveniens*, a defendant must first demonstrate that an adequate alternative forum exists and is available to resolve the dispute. *Piper,*

454 U.S. at 255. An alternate forum meets these requirements "when the defendant is 'amenable to process' in the other jurisdiction" and the alternate forum "permit[s] litigation of the subject matter of the dispute." *Id.* at 254 n. 22 (quoting *Gulf Oil v. Gilbert,* 330 U.S. 501, 506-07 (1947)). A forum is not adequate if the "remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all . . . ." *Piper*, 454 U.S. at 254.

"A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy all the benefits of an American court." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007). Defendants can meet their burden of establishing an adequate forum by offering support, such as affidavits from experts, to demonstrate analogous causes of action and adequate remedies in the alternate forum. *Stalinski v. Bakoczy*, 41 F. Supp. 2d 755, 759 (S.D. Ohio 1998).[3]

Plaintiffs can sue Defendants in the Regional Court of Aachen, Germany. It has subject matter jurisdiction and German law provides a basis for their claims. (Doc. 36-8 at ¶¶ 5-22). Defendants have consented to service there and have stipulated that they will not plead limitations if Plaintiffs re-file within a period of time that this Court determines to be reasonable. (Doc. 36-7 at ¶ 11). That stipulation is effective in a German court.

---

[3] The parties each submitted affidavits from experts. Plaintiffs submitted the affidavit of Jorg Fedtke, a tenured professor at both Tulane Law School and the University of Passau in Germany. (Doc. 39-4 at ¶ 3). He is a fully qualified German lawyer. (*Id.*) Defendants submitted the affidavit of Matthias Schlingmann, a member of the bar association in Hamburg, Germany and a licensed attorney in Germany. (Doc. 36-8 at ¶ 1). He is a partner at the firm of CMS Hasche Sigle Partnerschaft von Rechtsanwalten und Steuerberatern mbB, in Hamburg, Germany. (*Id.*) He has been a lawyer in Germany since 2004. (*Id.*) He is experienced in handling cases in Germany where individuals seek damages based on claims that they were injured by the malfunctioning of allegedly defective products. (*Id.* at ¶ 3).

(Doc. 36-8 at ¶ 24). *See, e.g., Mago Int'l LLC v. LHB AG*, No. 13-civ-3370, 2014 U.S. Dist. LEXIS 85410, at *23-24 (S.D.N.Y. June 18, 2014) ("Germany would be an adequate alternative forum" because "LHB is subject to the service of process there, no German statute of limitations bars Mago's claim, and the forum would allow Mago's claim to be litigated").[4]

Plaintiffs argue that German courts do not provide an adequate forum because of differences between the substantive and procedural rules. However, the rights and remedies available in the foreign forum need not be identical to those available in a United States court for the foreign forum to be adequate. *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 829-30 (6th Cir. 2009). Specifically, Plaintiffs argue that a German court would not have jurisdiction over the entire case, because Sabine Hefferan would have no claim for loss of consortium under German law. (Doc. 36-8 at ¶ 14). While Mrs. Hefferan could not pursue a claim for loss of consortium in Germany, that fact alone does not render Germany an inadequate forum. *See, e.g., Adams v. Merck & Co.*, 353 F. App'x 960, 963 (5th Cir. 2009) ("loss of consortium is a derivative cause of action that does not, standing alone, generally support maintaining jurisdiction in an inconvenient forum").[5] Plaintiffs also argue that German law will not allow punitive damages. Again, Plaintiffs inability to seek punitive damages does not make the German forum

---

[4] *See also Banculescu v. Compania Sud Americana De Vapores*, No. 11-civ-2681, 2012 U.S. Dist. LEXIS 167980, at *20 (S.D.N.Y. Nov. 20, 2012) (in personal injury claims "[n]umerous courts have found Germany to be an adequate alternative forum"); *Windt v. Qwest Commc'ns Int'l, Inc.*, 544 F. Supp. 2d 409, 417-18 (D.N.J. 2008) (U.S. courts consistently hold that German courts provide an adequate forum).

[5] Moreover, even if the case were litigated here, it would be governed by German substantive law, which would preclude an American-style loss of consortium claim.

inadequate. *See, e.g., Helog AG v. Kama Aerospace Corp.*, 228 F. Supp. 2d 91, 93 (D. Conn. 2002) (absence of punitive damages did not render Germany inadequate).

Plaintiff also argues that the absence of jury trials in Germany renders its courts inadequate. However, multiple federal courts have confirmed that German courts provide an adequate forum for civil claims. *See, e.g., Adams*, 353 F. App'x at 963; *Chirag v. MT Marida Marguerite Schiffahrts*, 983 F. Supp. 2d 188, 196-97 (D. Conn. 2013).

Plaintiffs also maintain that they will recover less money in Germany. While Plaintiffs may recover less money in Germany, that fact alone does not render the German forum inadequate. *Windt*, 544 F. Supp. 2d at 418.[6] Indeed, the fact that Plaintiffs, who chose to live in Germany and obtain medical care there, sued in the United States for injuries suffered in Germany because they thought doing so would get them more money, is a factor that favors dismissal. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (the more plaintiffs' choice of United States forum is motivated by forum shopping the less deference to which it is entitled and the easier for defendants to obtain dismissal on forum *non conveniens*).[7]

Accordingly, Defendants have established that the Regional Court of Aachen, Germany is an available and adequate alternative forum.

---

[6] Defendants' expert, a practicing lawyer who litigates product cases in Germany, points to significantly higher awards in Germany than those suggested by Plaintiffs. (Doc. 36-8 at ¶ 34).

[7] Moreover, the compensatory damages limits that Plaintiffs cite for product defects under German law only applies to statutory product claims, not the tort claim they are permitted to bring under the German Civil Code. (Doc. 36-8 at ¶ 35).

**B.      Plaintiffs' Choice of Forum and the Balance of Public and Private Interests**

Before balancing the private and public interest factors, the Court must first determine how much deference to afford Plaintiffs' choice of forum.  In general, a plaintiff's choice of forum is afforded a great amount of deference.  *See, e.g., Gulf Oil*, 330 U.S. at 508 (noting that "unless the balance [of conveniences] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed").  However, the Court finds Plaintiffs' argument, that this Court should keep the case out of deference to their forum "choice," to be unavailing.  Plaintiffs did not choose this forum, they filed the case in New Jersey.  Moreover, Plaintiffs are entitled to less deference regardless, because they chose a forum, where they do not reside and that is obviously not convenient for them, for obvious tactical reasons.

**1.      Private Interests**

Private interests include the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining attendance of unwilling witnesses, the possibility of viewing the scene if needed, and other practical problems that make trying a case easy, expeditious, and inexpensive. *Stewart v. Dow Chem. Co.,* 865 F.2d 103, 106 (6th Cir. 1989) (citing *Gulf Oil,* 330 U.S. 501).  Notably, in evaluating the private interest factors, "the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even

relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988).

On balance, access to proof appears to be more convenient in a German proceeding. Plaintiffs' disclosures reveal at least a dozen witnesses in Germany, including all of the medical witnesses with knowledge of Plaintiffs' surgery, care, and damages. Plaintiffs' counsel represented that they confirmed, through their clients, that the German doctors involved in Mr. Hefferan's surgery would voluntarily appear for depositions in Germany. (Doc. 36-4). However, neither side's counsel can assure or compel those appearances. Even if the doctors voluntarily appeared for depositions, a deposition is no substitute for a direct or cross-examination of a live witness. Accordingly, Defendants may be prejudiced by the inability to compel attendance of critical witnesses, especially the surgeons who actually used the device. *See, e.g., In re Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 324 (D.N.J. 1998) ("[t]he inability of this Court to compel the live testimony of critical witnesses at trial suggests that transfer is appropriate").

If this case proceeds in the United States, Defendants may be unable to obtain critical evidence in Germany, or at least face significant burden and expense in doing so, because to compel production of this evidence by nonparties in Germany, the Defendants would have to invoke the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555 (1972) (the "Hague Convention"). The use of the Hague Convention is more burdensome than discovery under the Federal Rules. Additionally, Germany does not allow Letters of Request to obtain pretrial discovery of

documents, so Defendants cannot compel third parties in Germany to produce documents. *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp.*, 545 F.3d 357, 366 (6th Cir. 2008). While resort to the Hague Convention may not be necessary to obtain testimony of the witnesses in Germany, it seems clear that such witnesses will not appear to testify at any trial in the United States. The Court acknowledges that while this, alone, is not reason enough to dismiss the action, it weighs in favor of Defendants. *See, e.g., Boston Telecomm. Grp., Inc. v. Wood*, 588 F.3d 1201, 1208 (9th Cir. 2009) (noting the availability of the Hague Convention for obtaining international third-party discovery and explaining that "[a]ny court will necessarily face some difficulty in securing evidence from abroad, but these complications do not necessarily justify [a *forum non conveniens*] dismissal").

If the case proceeds here, Defendants may have limited access to evidence, but Plaintiffs would have unfettered access to the evidence located in the United States under the Federal Rules. The unequal position in which the parties would be placed if discovery proceeds in this Court, weighs in favor of a proceeding in Germany, where most of the relevant evidence is located and where both sides would operate under the same rules. Moreover, Plaintiffs can obtain evidence located in the United States by invoking a statute which provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal…The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person.

28 U.S.C. § 1782.  Defendants have stipulated that use of this statute, on application by the Plaintiffs, is a proper means to obtain relevant evidence in this District.  (Doc. 36-7 at ¶ 8).

Another important factor to consider is the cost of litigating the action in the proposed alternative forum.  *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 346 (8th Cir. 1983) (with respect to a *forum non conveniens* motion, "[t]he court must be alert to the realities of the plaintiff's position, financial and otherwise, and his or her ability as a practical matter to bring suit in the alternative forum").  Plaintiffs argue that they would be obligated to pay a large portion of the anticipated court fees contemporaneously with the action, requiring them to pay potentially tens of thousands of dollars just to initiate the proceedings in Germany.  (Doc. 39-4 at ¶ 23).  Additionally, Plaintiffs maintain that they may have to post a bond "equivalent to the expected legal costs of the opponent," which is also likely tens of thousands of dollars.  (*Id.* at ¶¶ 24-25).  These facts weigh in favor of Plaintiffs.  However, if Plaintiffs proceeded in the United States, they would have extensive out-of-pocket costs for deposition transcript fees, expert fees, and travel expenses for themselves and their witnesses (which they would not incur for a trial in Germany).  Moreover, Defendants offered to waive the bond and even waive fee awards entirely, as long as that waiver is mutual.  (Doc. 36-7 at ¶ 9).

In sum, the private interests weigh in favor of Defendants.

### 2.    *Public Interests*

Relevant public interests include administrative difficulties of courts with congested dockets, the burden of jury duty on people of a community having no

connection with the litigation, desirability of holding a trial near those most affected by it, and the appropriateness of holding a trial in a diversity case in a court which is familiar with governing law.  *Stewart*, 865 F.2d at 106 (citing *Gulf Oil*, 330 U.S. 501).

**A.      Germany's Interest**

Germany has a greater interest in the resolution of this litigation, because it concerns a product sold in Germany and used by a German surgeon in a German hospital on a patient living in Germany.  *See, e.g., Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003) (litigating a case involving a foreign injury here, because the product was designed in the United States, "would curtain the rights of foreign governments to regulate their internal economies and threaten to engulf American courts with foreign claims").

**B.      United States' Interest**

To litigate the case here, this Court would have to undertake a complex choice of law analysis, which in itself favors dismissal.  *Miller v. Boston Scientific Corp.*, 380 F. Supp. 2d 443, 456 (D.N.J. 2005).  Additionally, the analysis would dictate the application of unfamiliar German substantive law, which is also a factor supporting dismissal.

Since this case was transferred from the District of New Jersey, this Court must apply the choice of law rules that would govern there.  *Ferens v. John Deere Co.*, 494 U.S. 516, 530-31(1990).  Under those rules:

> [the]first step requires the court to determine whether a true conflict exists. If the court is satisfied that a conflict exists, the analysis begins with the Second Restatement's presumption in personal injury cases that the local law of the state of the injury will apply.  The presumptive choice is then "tested against the contacts detailed in section 145 and the

> general principles outlined in section 6 of the Second Restatement."
> The presumption is overcome if another state has a more significant
> relationship to the parties or issues. Otherwise the presumption
> governs.

*Id.*

True conflict exists here, including differences with respect to loss of consortium claims, punitive damages, and limits on compensatory damages. This Court must therefore determine which law applies. The contacts to be considered pursuant to the Restatement (Second) of Conflict of Laws include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." § 145(2). The presumption is that the place of injury controls. *P.V. ex rel T.V. v. Camp Jaycee*, 962 A.2d 453, 467 (N.J. 2008).

There is no dispute that the device at issue was developed in the United States, manufactured in Mexico, and sold and used in Germany by German surgeons, nor is there any dispute that the Plaintiffs are German residents, nor that Mr. Hefferan chose to have his surgery and follow-up care in Germany. Therefore, Germany clearly has the most significant relationship to the parties and the issues. The injury occurred in Germany. The conduct causing the injury occurred at least in part in Germany, because the product was sold and used there and the surgery was performed there. Both Plaintiffs lived in Germany at all relevant times and still live there. The relationship between the parties is centered in Germany, since the parties have no connection other than the place where

13

EES' product allegedly was used in Mr. Hefferan's surgery.  *See, e.g., In re Vioxx*, 448 F. Supp. 2d 741, 749 (E.D. La. 2006) (under "most significant relationship" test Italian and French law applied to claims by their citizens for injuries caused there by U.S. product).

Therefore, German law governs the claims.  Applying German law is a strong factor favoring dismissal.  *See, e.g., Piper*, 454 U.S. at 260 (in "Gilbert…we explicitly held that the need to apply foreign law pointed towards dismissal"); *Leetsch v. Freedman*, 260 F.3d 1100, 1105 (9th Cir. 2001) (the burden on the district court to apply unfamiliar substantive German law would result in "inaccuracy and delay" in translating foreign law and weighed "especially heavily in favor of the German courts").

The imposition of jury duty upon citizens who have no relation to the litigation also weighs in favor of the Defendants.  *Ray v. Johnson & Johnson*, No. 3:09cv40072, 2011 U.S. Dist. LEXIS 143336, at *8 (N.D. Ohio Dec. 13, 2011).

Therefore, the public interests also weigh strongly in favor of Defendants.  The balance of private and public factors reveals that trial in this forum would be unnecessarily burdensome for both the Defendants and this Court.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, Defendants' renewed motion to dismiss based on the doctrine of *forum non conveniens* (Doc. 36) is **GRANTED** in favor of a proceeding in Germany, and this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED**.

Date:  <u>5/8/15</u>                                             <u>*s/ Timothy S. Black*</u>
                                                                              Timothy S. Black
                                                                              United States District Judge

14